UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
LAUREN E. REMIA,　　　　　　　　　　　　　　　Chapter 7
　　　　DEBTOR.　　　　　　　　　　　　　　　　Case No. 13-12002-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the "Chapter 7 Trustee's Objection to Debtor's Claim of Exemption in Ex-Spouse's Retirement Fund" (the "Objection") filed by Warren E. Agin (the "Trustee"), the Chapter 7 Trustee of the estate of Lauren E. Remia (the "Debtor"), and the Debtor's response thereto. The Trustee objects to the Debtor claiming as exempt a one-half interest in her ex-husband's retirement plan on the basis that without a qualified domestic relations order, the funds are not tax-exempt, and therefore, do not qualify as exempt under as 11 U.S.C. § 522(d)(12). For the reasons set forth below, I will overrule the Trustee's Objection.

**II. BACKGROUND**

The Debtor and her former husband, Leonard Remia, entered a separation agreement (the "Separation Agreement") on July 26, 2012.[1] The Agreement provided for the division of Leonard Remia's retirement plan (the "Retirement Plan"), stating that "[t]he Husband's benefits associated with his retirement account through CCHS Cash Balance Plan, shall be evenly divided between the parties."[2] The Separation Agreement made no further mention of the Retirement

---

[1] *See* The Objection, Docket No. 36 at ¶ 5.

[2] *Id.* at Ex. A.

1

Plan. On August 7, 2012, a Massachusetts probate court entered a Judgment of Divorce Nisi (the "Divorce Judgment"), which approved and incorporated the Separation Agreement.[3] While initially there was some dispute, the parties now agree that the Divorce Judgment was not a qualified domestic relations order ("QDRO") within the meaning of the the anti-alienation provisions of the Employment Retirement and Income Security Act ("ERISA").[4] On November 1, 2012, Leonard Remia faxed the Retirement Plan administrator the Separation Agreement and a request to transfer half of the funds in his account to the Debtor, although no distribution occurred to date.[5]

The Debtor filed a Chapter 7 petition on April 8, 2013. During the course of this proceeding, the Debtor filed "Schedule C – Property Claimed As Exempt" ("Schedule C"), as well as three substantively similar amendments. The third and most recent of the amendments ("Amended Schedule C"), which was filed after this matter was taken under advisement, lists a "1/2 interst [sic] in Ex-husband's ERISA Qualified (401K) - Cleveland Clinic retirement plan ("CCHS") due Debtor under Divorce Agreement" as exempt under 11 U.S.C. §§ 522(d)(12) and (n)[6] in the amount of $43,075.00 (the "Retirement Funds").[7] On Amended Schedule C, the Debtor clarifies that "[the interest] is therefore exempt both under ERISA and under 11 USC

---

[3] *Id.* at Ex. B.

[4] *See* 29 U.S.C. § 1056(d)(3).

[5] *See* the "Debtor's Supplemental Brief," Docket No. 43 at Ex. A.

[6] In each prior version of Schedule C, the Debtor listed 11 U.S.C. § 522(n) as the sole basis for her exemption, and only added the reference to 11 U.S.C. § 522(d)(12) in the current iteration. To be clear, 11 U.S.C. § 522(n) does not provide an exemption itself, but merely sets a cap on the amount of "assets in an individual retirement account" that a debtor may claim as exempt. *See* 11 U.S.C. § 522(n). Nevertheless, the parties' pleadings repeatedly refer to 11 U.S.C. § 522(n), and not 11 U.S.C. § 522(d)(12), as the basis for the Debtor's exemption. Because Amended Schedule C also lists 11 U.S.C. § 522(d)(12), which is the correct basis for the exemption, I will simply substitute this section for all references to 11 U.S.C. § 522(n).

[7] Amended Schedule C, Docket No. 52.

section 522[(d)(12)] as it would be distributed to the Debtor as an IRA," and further claims as exempt an "IRA plan set up to recieve [sic] 1/2 of the CCHS pension" in the amount of $1,000,000.00 pursuant to 11 U.S.C. § 522(d)(12).[8]

Since August 30, 2013, the Trustee has consistently objected to the Debtor's claim of exemption in the Retirement Funds, to which the Debtor has filed responses.[9] I heard the Objection on October 7, 2013, and, at the conclusion of oral arguments from both parties, took the matter under advisement.

### III. POSITIONS OF THE PARTIES

A. The Trustee

The Trustee argues that, on the date of the petition, the Debtor did not possess retirement funds in an account that qualified for deferred taxation by the Internal Revenue Code of 1986 (the "IRC"). He posits that, in the absence of a QDRO, ERISA's anti-alienation provisions prohibited any transfer of the Retirement Funds, leaving the Debtor with only an "equitable right to receive a distribution from the Retirement Plan."[10] Moreover, the Trustee asserts that without qualification, the Divorce Judgment does not render the Debtor a beneficiary under the Retirement Plan, which would entitle her to ERISA and IRC protection. Because tax-exempt status is a prerequisite to claiming an exemption under 11 U.S.C. § 522(d)(12), he contends that

---

[8] *Id.* The Debtor actually listed the basis for her exemption in the IRA plan as 11 U.S.C. § 552(n). As there is no such subsection of the Bankruptcy Code, I infer that she meant to list 11 U.S.C. § 522(n). As explained in footnote 6, *supra*, this reference should actually be 11 U.S.C. § 522(d)(12).

[9] As previously stated, the Debtor has repeatedly amended Schedule C, even after this matter was taken under advisement. As such, the exact pleadings before the court have been a moving target. Nevertheless, the parties agree that all of their previous written and oral arguments apply to the exemption claimed in Amended Schedule C. *See* "Statement of Renewed Arguments," Docket No. 56.

[10] Objection, Docket No. 36 at ¶ 11.

the Debtor's equitable right to the Retirement Plan is property of the estate under 11 U.S.C. § 541(a) and subject to turnover pursuant to 11 U.S.C. § 542(a).[11]

### B. The Debtor

The Debtor contends that her failure to obtain a QDRO prepetition is irrelevant because ERISA provides an 18-month window in which she may cure a deficiency in a domestic relations order ("DRO").[12] More importantly, however, the Debtor asserts that the right to obtain a QDRO is personal to her, and, as such, the Trustee cannot obtain any rights in the Retirement Plan or reach the Retirement Funds. Finally, the Debtor contends that to qualify for the 11 U.S.C. § 522(d)(12) exemption, the Retirement Funds need only be in an account that is exempt from taxation, which the Retirement Plan is, and not necessarily in her own name.

## IV. DISCUSSION

Commencement of a case under the Bankruptcy Code creates an estate comprised of all property of the debtor wherever located and by whomever held.[13] Section 522(b)(1) of the Bankruptcy Code permits an individual debtor to exempt certain property from the bankruptcy estate.[14] Such exempt property includes, "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."[15] Thus, the relevant property must meet two requirements to qualify for the exemption: (1) it must constitute retirement funds; and (2) it must

---

[11] Curiously, although the Trustee seeks turnover pursuant to 11 U.S.C. § 542(a), he argues that his ability to actually reach the Retirement Funds under applicable non-bankruptcy law is not currently at issue. Ultimately, because I find the Objection without merit, I need not address this issue.

[12] *See* 29 U.S.C. § 1056(d)(3)(H).

[13] 11 U.S.C. § 541(a).

[14] 11 U.S.C. § 522(b)(1).

[15] 11 U.S.C. § 522(d)(12).

4

be held in an account exempt from taxation under a provided section of the IRC.[16] Properly claimed exemptions are presumptively valid,[17] and the burden to prove otherwise is on the objecting party.[18] Moreover, "it is well established that exemptions should be construed liberally in favor of the debtor."[19]

To place the parties' arguments in their proper context, a brief description of the ERISA framework is in order. Congress enacted ERISA in 1974 to establish minimum standards for the operation of employee benefit and pension plans and conditioned a plan's eligibility for tax benefits on compliance with ERISA's requirements.[20] Generally, both ERISA and its counterpart provision in the IRC require pension plans to include a restriction on assignment and alienation of pension benefits to qualify for favorable tax treatment.[21] Notwithstanding the general prohibition, Congress created an exception from ERISA's anti-alienation rule for state "domestic relations order[s] . . . determined to be [] qualified domestic relations order[s],"[22] that "create[] or recognize[] the existence of an alternate payee's right to . . . receive all or a portion of the benefits with respect to a participant under a plan."[23] As explained by the United States Court of Appeals for the Ninth Circuit:

---

[16] *In re Seeling*, 471 B.R. 320, 322 (Bankr. D. Mass. 2012).

[17] 11 U.S.C. § 522(l).

[18] Fed. R. Bankr. P. 4003(c).

[19] *Christo v. Yellin (In re Christo)*, 228 B.R. 48, 50 (B.A.P. 1st Cir. 1999), *aff'd*, 192 F.3d 36 (1st Cir. 1999).

[20] *See* 29 U.S.C. §§ 1001, 1201–1242; *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746 (2004).

[21] *See* 29 U.S.C. § 1056(d)(1); 26 U.S.C. § 401(a)(13)(A).

[22] 29 U.S.C. § 1056(d)(3)(A).

[23] 29 U.S.C. § 1056(d)(3)(B)(i). To qualify as a QDRO, a DRO must "clearly specif[y]" the name and mailing address of the plan participant and the alternate payee, the amount or percentage of the benefits to be paid, the number of payments, and the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C).

> The QDRO exception was enacted to protect the financial security of divorcees. Because Congress was also concerned with reducing the expense to plan providers and protecting them from suits for making improper payments, it required that QDROs be specific and clear and allowed plan administrators to approve the QDRO before they would be required to act in accordance with it.[24]

Once a QDRO enters, an "alternate payee," a person recognized as having a right to receive benefits from the pension plan pursuant to a DRO, is considered a plan "beneficiary."[25]

The plan administrator bears the ultimate responsibility for determining whether a DRO meets the requirements of a QDRO.[26] Once a DRO is submitted, however, the plan administrator must segregate amounts payable to the alternate payee under the DRO while determining whether it qualifies as a QDRO.[27] Moreover, Congress provided an 18-month window in which an alternate payee could cure any defects in an original DRO and obtain an enforceable QDRO.[28]

The first issue is whether the Separation Agreement and Divorce Judgment granted the Debtor a property interest in the Retirement Funds such that she may claim them as exempt. The Trustee asserts that the Debtor's interest in the Retirement Plan is not "in the form" of retirement funds, but is only an "equitable right" to payment from the Retirement Plan, and thus, does not satisfy the first requirement of 11 U.S.C. § 522(d)(12).[29] While there does not appear to be any reported decision addressing whether a Debtor has an exemptible interest in a retirement plan by

---

[24] *Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815, 817 (9th Cir. 1997) (internal citations omitted).

[25] 29 U.S.C. §§ 1056(d)(3)(K) and (J).

[26] *See* 29 U.S.C. § 1056(d)(3)(G).

[27] 29 U.S.C. § 1056(d)(3)(H)(i).

[28] *See* 29 U.S.C. § 1056(d)(3)(H)(ii) and (v).

[29] *See* "Reply in Support of Chapter 7 Trustee's Objection to the Debtor's Claimed Exemption," Docket No. 44 at ¶ 10; Objection, Docket No. 36 at ¶ 4.

virtue of a DRO, the nature of the interest granted by the unqualified DRO has been examined in the context of dischargeability proceedings and is instructive to my analysis.[30]

In *In re Gendreau*, the Ninth Circuit held that the debtor could not discharge his former wife's right pursuant to an unqualified DRO to fifty percent of his two ERISA-qualified pension plans.[31] In that case, the debtor argued, just as the Trustee does here, that without a valid QDRO his former wife had only a right to payment from the pension plans, and that such right was a dischargeable debt.[32] The Ninth Circuit disagreed, concluding

> [w]hether or not [the former spouse's] domestic relations order, as issued, was a QDRO is irrelevant: The QDRO provisions of ERISA do not suggest that [the former spouse] has no interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained.[33]

In support, the Ninth Circuit reasoned that entry of a QDRO does not change the nature of an alternate payee's interest in a retirement plan, as evidenced by the fact that a plan administrator must segregate amounts that would be payable to the alternate payee while the qualification of the DRO is being determined.[34] I note that this interpretation is further bolstered by the statutory

---

[30] *See, e.g.*, *In re Gendreau*, 122 F.3d at 818; *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 527 (B.A.P. 10th Cir. 2002) ("We conclude not having a QDRO is not fatal to the [former spouse's] claim that she has an ownership interest in the [debtor's retirement plans]"); *Devenger v. Forant (In re Forant)*, 331 B.R. 151, 158 (Bankr. D. Vt. 2004) ("The Court rejects the [debtor's] argument that the subject account properties have not become the [former spouse's] property because the required QDRO was never prepared . . . . upon entry of the divorce decree, the family court extinguished the marital interest each party had in the marital estate, and redistributed the property, creating new interests in place of the old. The necessary paperwork required to convey title of the subject account properties, *i.e.,* the preparation, execution and filing of the QDRO, is merely ministerial." (internal citation omitted)).

[31] *In re Gendreau*, 122 F.3d at 815.

[32] *Id.* at 818.

[33] *Id.* at 819.

[34] *Id.* at 818-819. *See* 29 U.S.C. § 1056(d)(3)(H)(i). Indeed, both the United States Court of Appeals for the Third Circuit and the Ninth Circuit have concluded that the Congressional intent behind this provision was to afford the parties time to obtain a DRO which the plan administrator finds qualifying. *See Files v. ExxonMobil Pension Plan*, 428 F.3d 478, 489 (3d Cir. 2005); *Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 422 *opinion amended on denial of reh'g*, 255 F.3d 661 (9th Cir. 2000).

definition of a QDRO as a "domestic relations order that creates *or recognizes*" an alternate payee's rights in an ERISA plan, indicating that the rights may already exist prior to qualification.[35]

Ultimately, while QDROs are integral to maintaining the integrity of ERISA plans, they do not necessarily create a property interest in such a plan. Here, the Divorce Judgment, which incorporated the Separation Agreement, granted the Debtor a property interest in the Retirement Funds and extinguished her former husband's interest in the same. Accordingly, I find that the Debtor's property constitutes "retirement funds," and the first requirement of the 11 U.S.C. § 522(d)(12) exemption is met.

The next issue is whether the Retirement Funds are "in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the [IRC]."[36] The Trustee has not challenged the Debtor's assertion that the Retirement Plan is ERISA-qualified and exempt from taxation pursuant to IRC Section 401(k).[37] Nevertheless, the Trustee contends that absent a QDRO, the Debtor is not a beneficiary of the Retirement Plan entitled to tax-exempt status under ERISA and the IRC. This argument is also unavailing. Section 522(d)(12) of the Bankruptcy Code requires only that funds be in a fund or account exempt from taxation. There is no question that in the absence of a QDRO, the Retirement Funds have not moved from the Retirement Plan. The Bankruptcy Code does not appear to require, nor has the Trustee cited any authority to support the proposition, that that the Retirement Funds be held in an account

---

[35] 29 U.S.C. § 1056(d)(3)(B)(i). *See Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d at 422 ("This benefit-segregation requirement obviously assumes that benefits may already be payable during the period the plan is determining whether the DRO is a QDRO.").

[36] 11 U.S.C. § 522(d)(12).

[37] *See* Objection, Docket No. 36 at ¶ 9.

belonging to the Debtor.[38] Accordingly, I find that the Retirement Funds satisfy the second requirement of 11 U.S.C. § 522(d)(12).

## V. CONCLUSION

In light of the foregoing, I will enter an order overruling the Objection.

*[signature: William C. Hillman]*

William C. Hillman
United States Bankruptcy Judge

Dated: December 20, 2013

Counsel Appearing:

    Warren E. Agin, Swiggart & Agin, LLC, Boston, MA
        for Warren E. Agin, the Chapter 7 Trustee
    Henry C. Ellis, Taunton, MA
        for Lauren E. Remia, the Debtor

---

[38] *Cf. In re Seeling*, 471 B.R. at 322-323 (holding that funds in an inherited IRA were "retirement funds" qualifying for the 11 U.S.C. § 522(d)(12) exemption, even though the funds were not originally set aside for the debtor's retirement). I further note that ERISA and the IRC were designed so that the type of funds at issue could retain their character as tax-exempt throughout the process of a marital property settlement. Indeed, pursuant to 26 U.S.C. §§ 402(c) and (e)(1) and 408(e)(1), the Debtor may roll the Retirement Funds over into her own individual retirement account exempt from taxation.